UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                 :

UNITED STATES OF AMERICA,           :

                      v.                 :

                               :

JOSHUA RODRIGUEZ,              :

                               :

                    Defendant.  :

                               :

--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/28/2020__

19-CR-12 (VSB)

**OPINION & ORDER**

VERNON S. BRODERICK, United States District Judge:

      Before me is a motion requesting that I "modify Joshua Rodriguez's sentence to immediately release him to a period of home confinement followed by a term of supervised release, pursuant to 18 U.S.C. § 3582 (c)(1)(A), because he suffers from significant underlying health conditions which put him at great risk should he contract COVID-19."[1]  (Rodriguez Comp. Rel. Mem. 1, 2.)[2]  Because Rodriguez has not met his burden of establishing that there currently exist extraordinary and compelling reasons to reduce his sentence and grant his release, Defendant's motion for compassionate release is denied without prejudice.

**I.**     **Background and Procedural History**[3]

      The sealed indictment charging Defendant Joshua Rodriguez ("Defendant" or "Rodriguez") and his co-defendants was filed on January 7, 2019, (Doc. 1), and unsealed on

---

[1] "COVID-19" refers to the coronavirus disease 2019. *See generally Coronavirus Disease 2019 (COVID-19), Frequently Asked Questions*, Centers for Disease Control and Prevention (updated May 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/faq.html.

[2] "Rodriguez Comp. Rel. Mem." refers to the letter from Grainne E. O'Neill to the Honorable Vernon S. Broderick dated May 13, 2020.  (Doc. 240.)

[3] The facts contained in this section are taken from the allegations in the sealed indictment filed on January 7, 2019 ("Indictment" or "Ind.").  (Doc. 1.)

January 9, 2019, (Doc. 2).  The Indictment charged Rodriguez and others with conspiracy to commit bank fraud and aggravated identity theft.  Rodriguez and his co-conspirators agreed to execute what is sometimes referred to as a "card cracking scheme".  (Ind. ¶ 2.)  Specifically, the scheme involved members doing the following:  "creating or obtaining forged or fraudulent checks; [] recruiting third parties ('Collusive Account Holders') to provide personal identification information ('PII') and/or means of identification, such as bank account numbers or bank cards, to participants in the [scheme]; [] depositing the forged or fraudulent checks into accounts held by Collusive Accountholders; and [] promptly withdrawing funds from the Collusive Accountholders' accounts or using such funds to purchase money orders before the financial institutions discovered the fraudulent nature of the deposited checks."  (*Id*. ¶¶ 2. a.-d.) The scheme also involved obtaining the personal identifying information, "including, among other things, names, bank account numbers, bank cards, bank account access codes, and signatures of other persons or businesses for the purpose of depositing forged or fraudulent checks into the bank accounts of Collusive Accountholders."  (*Id*. ¶ 3.)  Rodriguez and others than used the personal identifying information to withdraw "funds from bank accounts of the Collusive Accountholders or us[e] such funds to purchase money orders before the relevant financial institutions discovered the fraudulent nature of the deposited checks."  (*Id*. ¶ 4.)

On April 26, 2019, Rodriguez pled guilty to participating in a conspiracy to commit bank fraud.  Specifically, Rodriguez admitted that

> During the period covered by the conspiracy, October 2018, I agreed with others to commit bank fraud in the Bronx.  I took money I knew was stolen and deposited it into an account that didn't belong to me.  I knew this was against the law and wrong and I am very sorry I did that.

Doc. 87, at 18:24-19:4.)  Rodriguez also confirmed that he deposited checks he knew would not clear and then withdrew the money from banks.  (*Id*. 19:8-11.)

According to his plea agreement with the Government, Rodriguez's guidelines range was 15 to 21 months' imprisonment.  The Presentence Investigation Report ("PSR") also calculated Rodriguez's guidelines range as 15 to 21 months' imprisonment.  (PSR ¶ 82.)  During his presentence interview, Defendant reported to the Probation Office that he had recently been diagnosed with diabetes.  (Id. ¶ 55.)  Rodriguez was sentenced on October 30, 2019, to a year and a day imprisonment and three years of supervised release.  (Doc. 162, at 2-3.)  Rodriguez surrendered to FCI Fairton Camp on January 2, 2020, (Rodriguez Comp. Rel. Mem. at 1, 4), and is scheduled to be released on November 8, 2020, (*Find an inmate*, Federal Bureau of Prisons (last visited May 25, 2020), https://www.bop.gov/inmateloc/).

Rodriguez through his attorney submitted his letter request for compassionate release by email to Warden Jamal Jamison at FCI Fairton on April 1, 2020.  (Rodriguez Comp. Rel. Mem., Exhibit A.)  On May 13, 2020, Rodriguez filed his motion for compassionate release.  (Doc. 240.)  Rodriguez seeks to be released immediately "to a period of home confinement followed by a term of supervised release, pursuant to 18 U.S.C. § 3582(c)(1)(A)."  (Rodriguez Comp. Rel. Mem. at 1.)  If released, Rodriguez intends to live with his sister—who owns her "own cleaning franchise"—and her infant son in a spare bedroom at 600 East 141st Street, Bronx, New York. (*Id*. at 2.)  As of the filing of Defendant's motion, neither Warden Jamison nor anyone else from the Federal Bureau of Prisons ("BOP") had responded to Rodriguez's request for compassionate release.  (*Id*. at 1.)  The Government filed its opposition on May 21, 2020.  (Doc. 243.)

## II.   Discussion

Defendant argues he "suffers from significant underlying health conditions"—Type II diabetes requiring insulin injections and liver inflammation—"which put him at great risk should he contract COVID-19."  (Rodriguez Comp. Rel. Mem. at 2.)  Rodriguez then asserts that:  (1)

FCI Fairton "is a major employer for the area" in New Jersey, (*id*. at 4); (2) two staff members at FCI Fairton have tested positive for coronavirus, (*id*.); (3) there have been 1,400 cases and 40 deaths from the coronavirus in the surrounding area, (*id*.); (4) the structure of prisons make adherence to proper "hygiene [] difficult and social distancing [] impossible," and "quarantine is not an option", (*id*. at 5); (5) "he has no meaningful ability to avoid COVID-19 in the prison, should an outbreak occur," (*id*. at 7); and (6) "[h]is diabetes and liver disease are comorbidities that present [] serious and significant risks should Mr. Rodriguez contract COVID-19," including "serious injury or even death," (*id*. at 2).  In opposition, the Government argues that Defendant's motion should be denied because:  (1) there have been no confirmed cases at FCI Fairton Camp, (Govt. Opp. at 3)[4]; (2) "BOP has taken a number of aggressive steps to protect inmates and staff from infection", (*id*. at 3-4); (3) BOP medical records for Defendant show that he is "routinely checked for symptoms associated with COVID-19", (*id*. at 4); and (4) Defendant "has [not] alleged contact with anyone diagnosed with COVID-19", (*id*).  Based upon these facts, the Government asserts that Rodriguez's motion "does not set forth extraordinary and compelling reasons warranting a sentence reduction to time served."  (*Id*. at 3.)  The Government has the better of the argument.  Based upon the facts and circumstances presented by Rodriguez's motion, I find that he has not established extraordinary and compelling reasons warranting a reduction in his sentence and his release from prison because:  (1) there have been no confirmed cases of inmates contracting COVID-19 in FCI Fairton Camp; (2) only two staff members have tested positive for COVID-19 in FCI Fairton; (3) Rodriguez has not demonstrated that he would be less at risk were he released and subject to home confinement in the Bronx; and (4)

---

[4] "Govt. Opp." refers to the letter from Assistant United States Attorneys Jarrod L. Schaeffer and Daniel G. Nessim to the Honorable Vernon S. Broderick dated May 21, 2020.  (Doc. 243.)

Rodriguez's criminal history and the circumstances of the offense of conviction support his continued incarceration.

### A.    *Applicable Law*

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, — F. Supp. 3d —, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020).  Section 3582(c)(1)(A)(i), the compassionate release statute, provides one such exception.  The compassionate release statute permits a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[5]  18 U.S.C. § 3582(c)(1)(A).  The moving party bears the burden of proving that extraordinary and compelling reasons exist.  *See United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.")); *see also United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010) ("[I]f the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (quoting *Butler*, 970 F.2d at 1026)); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013).

---

[5] The relevant Sentencing Commission policy statement is found in U.S.S.G. § 1B1.13, although I note that the Sentencing Guidelines have not yet been revised to take into account the First Step Act.  *See United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, *2 (S.D.N.Y. Apr. 3, 2020).  The relevant section provides that a court may reduce the term of imprisonment if (1) "extraordinary and compelling reasons warrant the reduction," *id.* § 1B1.13(1)(A); (2) "the Defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and (3) "the reduction is consistent with this policy statement," *id.* § 1B1.13(3).  The Application Notes describe the circumstances under which "extraordinary and compelling reasons exist."  *Id.* § 1B1.13 Application Note 1.

Until recently, a court could not order compassionate release unless the BOP requested such relief on a prisoner's behalf by filing a motion. *See* U.S.S.G. § 1B1.13 (stating, among other things that "[u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)"); *see also Gotti*, 2020 WL 497987, at *1 ("Until last December, a court could not modify a defendant's duly-imposed sentence on compassionate release grounds unless it received a motion from the Bureau of Prisons asking that the court consider such modification."). However, in December 2018, Congress passed the First Step Act, which did away with BOP's unilateral ability to deny a prisoner compassionate release but did not remove the BOP from the process entirely. *See id.* The statute is clear that a court may only grant compassionate release "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

### B.    *Application*

#### 1.  Exhaustion

The Government does not dispute that based upon Defendant's representation and the letter to Warden Jamison attached as Exhibit A to his compassionate release motion, that more than 30-days had passed without a decision by the BOP on Rodriguez's compassionate release request by the time Rodriguez filed the instant motion. Therefore, as the Government concedes, Rodriguez "appears to have satisfied the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A)."

(Govt. Opp. at 1 n.1).  In other words, since 30-days elapsed without BOP taking any action on Rodriguez's compassionate release request, he has satisfied the exhaustion requirement of section 3582(c)(1)(A).  *See United States v. Ng Lap Seng*, No. 15-cr-706 (VSB), 2020 WL 2301202, at *6 (S.D.N.Y. May 8, 2020) (interpreting the word "lapse" as "requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days).  I therefore turn to a substantive evaluation of Rodriguez's motion.

### 2.  Section 3553(a) Factors

Prior to considering whether a defendant has established extraordinary and compelling reasons for compassionate release, section 3582 directs courts to consider the factors set forth in 18 U.S.C. § 3553(a).  Here, I find that those factors militate against a sentence of time served.[6]

Granting Rodriguez compassionate release would require the reduction of his sentence to time served.  This would mean the year and a day sentence I imposed would be reduced by about half.  At the time of his sentencing, Rodriguez had three prior convictions, including a federal narcotics conviction.  The federal narcotics conviction was the result of a case before Judge Lewis A. Kaplan, and Judge Kaplan granted Rodriguez a substantial variance of time served— which amounted to approximately 90-days' incarceration—where the applicable guidelines range was 37 to 46 months' imprisonment.  (*See* Govt. Opp. at 1; Doc. 158, at 12:2-4.)  After considering the section 3553(a) factors at Rodriguez's sentencing I imposed a sentence—12 months' and a day imprisonment—that represented a variance from the applicable guidelines range of 15 to 21 months' imprisonment.  Considering those factors again here, I do not find that the circumstances have changed.

---

[6] As discussed below, Defendant has also failed to demonstrate that the risk he faces by continued incarceration at FCI Fairton is greater than the risk he would face if his sentence is reduced to time served and he is subject to home confinement in the Bronx.  Therefore, he has not met his burden of establishing that extraordinary and compelling reasons warrant the reduction of his sentence and release.

### 3.   Extraordinary and Compelling Circumstances

The Government does not dispute that Rodriguez suffers from Type II diabetes and "acknowledges that Centers for Disease Control ("CDC") have identified diabetes and liver conditions as risk factors" for COVID-19.  (Govt. Opp. 4.)  Therefore, based on Rodriguez's confirmed diagnosis of Type II diabetes, he has established that he is in an at-risk category.  By contrast, I find that the evidence that Rodriguez has a liver condition that places him at increased risk less than compelling.  However, for purposes of the analysis that follows, I find that Rodriguez suffers from Type II diabetes and I assume, without deciding, that Rodriguez also suffers from liver disease.

Rodriguez argues his Type II diabetes and liver disease present extraordinary and compelling circumstances when considered in conjunction with the facts that (1) FCI Fairton "is a major employer for the area" in New Jersey, (Rodriguez Comp. Rel. Mem. 4); (2) two staff members at FCI Fairton have tested positive for coronavirus, (*id.*); (3) there have been 1,400 cases and 40 deaths from the coronavirus in the surrounding area, (*id.*); (4) the structure of prisons make adherence to proper "hygiene [] difficult and social distancing [] impossible," and "quarantine is not an option", (*id.* at 5); and (5) "he has no meaningful ability to avoid COVID-19 in the prison, should an outbreak occur," (*id.* at 7).  As support for this argument Rodriguez cites data related to the spread of COVID-19 in the area where FCI Fairton is located as well as data related to the spread of COVID-19 in prisons generally.  Rodriguez argues that the steps BOP has taken to protect inmates are insufficient to allow him to protect himself.  (*Id.* at 5-6, 9.) Rodriguez also argues that "[t]he requested modification would allow him to be transferred to home confinement at his sister's house, where he could safely isolate to protect himself from COVID-19 while attending online counseling and courses at the direction of probation."  (Reply

2.)[7]

Although the spread of COVID-19 in Cumberland County—the county where FCI Fairton is located—the structural issues related to prisons, and the spread of COVID-19 within prisons, including the BOP, are all relevant to Rodriguez's risk of contracting COVID-19, that data and facts do not warrant the conclusion that Rodriguez is more at risk of contracting COVID-19 and suffering serious illness or death if he remains incarcerated at FCI Fairton. Although Rodriguez cites data he claims supports this argument, he fails to adequately address data specifically related to FCI Fairton.  Nor does Rodriguez cite data from New York City or the Bronx in his effort to establish that there are extraordinary and compelling reasons for his release, or his implicit argument that he would be less likely to contract the virus by living in his sister's apartment in the Bronx.  The COVID-19 statistics for New York City and the Bronx compared to Cumberland County suggest Rodriguez would be more at risk in New York City and the Bronx.

The parties agree that there have been no confirmed cases of COVID-19 among the inmates and only two among the staff at FCI Fairton.  The Government argues that these facts support a finding Defendant has not demonstrated that he is at risk and met his burden of demonstrating extraordinary and compelling reasons warranting his release.  Defendant, on the other hand, argues that these facts merely demonstrate that no inmates and two staff members have tested positive, not that COVID-19 has not infected FCI Fairton.  (*See* Rodriguez Comp. Rel. Mem. 3-4.)  Rodriguez's argument if flawed.  As an initial matter, Rodriguez has the burden to demonstrate extraordinary and compelling reasons warranting his release, and Rodriguez fails

---

[7] "Reply" refers to the letter from Grainne E. O'Neill, Esq. to the Honorable Vernon S. Broderick, dated May 26, 2020.  (Doc. 245.)

to offer affirmative proof directly demonstrating that COVID-19 has or will infect FCI Fairton, and does not otherwise adequately address the fact that no inmate and only two staff members have tested positive for COVID-19.  In lieu of evidence supporting his position, Rodriguez asks me—without any citation to supporting legal authority—to draw the inference that COVID-19 has infected or will inevitably infect the inmate population at FCI Fairton and that he will not be protected.  I decline to draw such an inference in the face of facts that do not support this conclusion.  As an initial matter, the first confirmed death in the United States from COVID-19 was in February, and COVID-19 was likely spreading in this country as early as late January 2020.  *Autopsies find first U.S. coronavirus death occurred in early February, weeks earlier than previously thought*, The Washington Post (April 22, 2020), https://www.washingtonpost.com/nation/2020/04/22/death-coronavirus-first-california/.  It is also clear that the transmission of COVID-19 does not exclusively occur from individuals who never develop symptoms.  According to the CDC, the percentage of transmission occurring prior to the onset of symptoms is 40%, and the mean time from exposure to symptoms is approximately 6 days.  COVID-19 Pandemic Planning Scenarios, Centers for Disease Control and Prevention (last updated May 20, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html#table-2.  Therefore, the assumption that COVID-19 has infected inmates at FCI Fairton but no cases have been confirmed defies logic.  Stated differently, the facts and statistics strongly suggest that had inmates contracted COVID-19 in FCI Fairton that at least some of those inmates would have exhibited symptoms and required treatment even if they might have been initially infected asymptomatically, especially since we are now four months from the first reported death due to COVID-19.  Rodriguez ignores the fact that FCI Fairton has put in place, in accordance with BOP directives, a number of policies and

actions to mitigate the spread of COVID-19,[8] including apparently testing of inmates for symptoms, (Govt. Opp. at 4 ("medical records obtained from the BOP further show that [Rodriguez] is routinely checked for symptoms associated with COVID-19.").  Moreover, the blanket assumption Rodriguez would like me to adopt, that the actions taken by FCI Fairton are ineffective, is a generalization and an overstatement that is belied by the fact that no inmate at the jail has tested positive for COVID-19.

Rodriguez's request to be released from FCI Fairton to live in his sister's apartment in the Bronx until November 8, 2020, also appears to be based upon the underlying assumption that the risk of him contracting COVID-19 is lower if he is permitted to live in his sister's Bronx apartment.  This assumption does not appear to be based upon any evidence other than Rodriguez's generalization about COVID-19's spread in Cumberland County and within prisons generally.

FCI Fairton Camp is located in Cumberland County, New Jersey.  *FCI Fairton*, Federal Bureau of Prisons (last visited May 25, 2020), https://www.bop.gov/locations/institutions/fai/. FCI Fairton, like other BOP facilities, began implementing its pandemic plan in January 2020, and has continued to implement efforts to mitigate the spread of COVID-19 since that time.  *See Gumora*, 2020 WL 1862361, at *10–11.  Like all BOP facilities, FCI Fairton has suspended all visits to the facility.  *FCI Fairton*, Federal Bureau of Prisons (last visited May 25, 2020), https://www.bop.gov/locations/institutions/fai/.  There is no question that the steps taken by FCI Fairton and the BOP are designed to limit the spread of COVID-19.  Defendant does not appear

---

[8] In January 2020, the BOP began to plan specifically for COVID-19 to preserve the health and safety of inmates and BOP personnel.  *See Federal Bureau of Prisons COVID-19 Action Plan*, Fed. Bureau of Prisons (updated Mar. 13, 2020), https://www.bop.gov/resources/news/20200313_covid-19.jsp.  The plan has thus far included five phases that have been implemented beginning in January 2020.  *See United States v. Gumora*, No. 20-CR-144 (VSB), 2020 WL 1862361, at *10–11 (S.D.N.Y. Apr. 14, 2020) (discussing the BOP's five-phased COVID-19 response plan).

to dispute the intent behind the implementation of these measures; instead, Rodriguez appears to argue that such measures are insufficient, (*see* Rodriguez Comp. Rel. Mem. 2, 4-6). Based upon the fact that there have been no reported cases of COVID-19 among inmates and only two among the staff at FCI Fairton, I find that the measures taken by FCI Fairton and the BOP appear to be working at FCI Fairton at this time.

Rodriguez does not propose that he live alone if he is released from custody. Rather, he indicates that he intends to live with his sister and her infant in an apartment in 600 East 141st Street, Bronx, New York (the "Apartment"). Rodriguez's sister, Loren Rubio, owns her own cleaning franchise, and hopes that Rodriguez "can help her with the baby while she works during the quarantine." (Rodriguez Comp. Rel. Mem. at 2.) Ms. Rubio and her infant are potential spreaders of COVID-19, but Rodriguez does not provide information relevant to assessing the risk to him from residing in her apartment. Specifically, Rodriguez does not provide any information concerning 600 East 141st Street (the "Building"), or his sister and her infant. For example, Rodriguez does not provide any information concerning whether: (1) any of the residents of the Building have had or currently have COVID-19; (2) the Building has implemented any measures to limit the spread of COVID-19 among the residents and staff of the Building; (3) his sister or her infant had or have COVID-19; (4) his sister comes into contact with others as a result of her work; (5) his sister has commitments other than work that require her to interact with others; and (6) his sister has been practicing appropriate hygienic measures and social distancing in her life, including at work and within the Building. Without this information it is not possible to realistically assess the risk to Defendant of living in the Apartment with his sister and her infant.

Putting to the side the potential risk to Rodriguez's health that living with his sister and

her infant in the Building might pose, New York City has widely been considered the COVID-19 epicenter for the United States and the world.  *See, e.g.*, *Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, Centers for Disease Control and Prevention (last updated May 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.  The level of community spread of COVID-19[9] in New York City and Bronx County is materially greater than the level of community spread of COVID-19 in Cumberland County—where FCI Fairton is located.  As of May 28, 2020, 20,844 people have died from, and 204,781 people have been infected with, COVID-19 in New York City, which translates to 1 death per 405 people and 1 person out of 41 people infected.  *Coronavirus in the U.S.: Latest Map and Case Count*, The New York Times (last viewed May 28, 2020),

https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Spotlight&pgtype=Homepage.  In Bronx County—where Rodriguez intends to live—as of May 28, 2020, there have been 4,093 deaths and 44,503 people infected with COVID-19, which translates to 284.7 deaths per 100,000 residents and 3,095.1 people infected per 100,000 residents.  *National*, *Deaths reported per 100,000 residents by county*, The Washington Post (last viewed May 28, 2020),

https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/?itid=hp_rhp__no-name_hp-in-the-news%3Apage%2Fin-the-news.  By contrast, as of May 28, 2020, in Cumberland County, New Jersey—where FCI Fairton is located—there have been 65 deaths and 2,098 people infected with COVID-19, which translates to 42.4 deaths per 100,000 residents and 1,367.7 people infected per 100,000 residents.  *Id.*  These statistics of the

---

[9] "Community spread means people have been infected with the virus in an area, including some who are not sure how or where they became infected."  *Frequently Asked Questions, Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (last visited May 19, 2020),  https://www.cdc.gov/coronavirus/2019-ncov/faq.html#In-Case-of-an-Outbreak-in-Your-Community.

relative community spread in the two locations support the inference that Rodriguez would be more at risk of contracting COVID-19 were he released and required to stay in his sister's apartment in the Bronx than he would be by remaining in FCI Fairton.

Therefore, based upon the fact that (1) Rodriguez intends to live with two other people—his sister and her infant—in the Apartment and fails to provide details concerning his sister's contact with others and any hygiene protocols, if any, she may follow; (2) Rodriguez fails to provide information about the Building and whether residents of the building have or had COVID-19 and what steps, if any, the Building may be taking to mitigate the spread of COVID-19 among its residents; (3) there have been no reported COVID-19 cases among the inmates at FCI Fairton; (4) there are lower levels of community spread and death in Cumberland County—the county where FCI Fairton is located—than New York City and the Bronx; and (5) there are high levels of community spread and death in the Bronx and in New York City, I find that Defendant has failed to demonstrate that he is more at risk of contracting COVID-19 if he remains incarcerated at FCI Fairton than if he were released to live in the Apartment in the Bronx. Therefore, Rodriguez has failed to meet his burden of establishing that there exist extraordinary and compelling reasons to reduce his sentence and grant his release.

### III.    <u>Conclusion</u>

My decision in this case is based on the unique circumstances of Defendant Rodriguez and the context in which his motion has been made. For the reasons stated above, I find that Rodriguez has not sufficiently established extraordinary and compelling circumstances justifying the reduction in his sentence and his release from custody; therefore, Defendant's motion for compassionate release is DENIED. The Clerk's Office is directed to terminate docket entries 240 and 245.

SO ORDERED.

Dated:     May 28, 2020
           New York, New York

Vernon S. Broderick
United States District Judge